The Honorable Tom Kennedy, Prosecuting Attorney Fifth Judicial District P.O. Box 3080 Russellville, Arkansas 72801
Dear Mr. Kennedy:
This official Attorney General opinion is issued in response to your recent questions regarding a proposed lease agreement between the City of Clarksville and a private corporation, under the terms of which the private corporation would lease certain property owned by the city. A copy of the proposed lease agreement was attached to your correspondence. You have presented the following questions:
Is it legal for the city to enter into this lease agreement if:
 (a) The property was not offered to other potential lessees through a formal bidding procedure? and
 (b) Under the terms of the lease agreement, the city will receive only $1.00 per each twenty-year term?
RESPONSE
I must first note that the construction of contracts and agreements is a matter that is not ordinarily within the scope of an Attorney General opinion. This office lacks the resources and the authority to undertake a factual review of the terms of specific agreements. However, it is within the scope of my authority to address the purely legal issues that you have raised.
Bidding
It is my opinion that it is generally permissible for the city to enter into the lease agreement even though the property was not offered to other lessees through a formal bidding procedure. As explained below, the city is not, however, prohibited from obtaining bids for the disposition of property.
Although cities are required to obtain bids prior to making certain expenditures, see A.C.A. §§ 14-58-303 and 22-9-203, they are not required to obtain bids for the sale or lease of property by the city to other parties. The sale or lease of property by cities is governed generally by the provisions of A.C.A. § 14-54-302 which specifically authorizes cities to lease property. That statute states:
 (a) Municipal corporations are empowered and authorized to buy, sell, convey, lease, rent, or let any real estate or personal property owned or controlled by the municipal corporations. This power and authorization shall extend and apply to all such real estate and personal property, including that which is held by the municipal corporation for public or governmental uses and purposes.
A.C.A. § 14-54-302(a).
The statute sets forth only one formal requirement in connection with such leases, as follows:
 (c) The execution of all contracts and conveyances and lease contracts shall be performed by the mayor and city clerk or recorder, when authorized by a resolution, in writing, approved by a majority vote of the city council present and participating.
A.C.A. § 14-54-302(c). (In addition to the above-quoted requirement, the lease agreement must be supported by adequate consideration. See
discussion below under the heading "Consideration".)
I therefore conclude that the city need not obtain bids for the lease of the property. Rather, the city is required only to authorize the lease by resolution in writing, approve the resolution by a majority vote of the city council, and formally execute the lease contract through the city's mayor and city clerk or recorder.[1]
As indicated above, it must be noted that cities are not prohibited from obtaining bids prior to the disposition of property. The authority granted to cities in A.C.A. § 14-54-302 is certainly broad enough to encompass such an act by a city in connection with a sale or lease of property. In addition, the provisions of A.C.A. § 22-4-501 and -503 specifically indicate that cities can obtain bids prior to the disposition of property under the authority of that subchapter.
A.C.A. § 22-4-501 explicitly authorizes cities to sell, lease, grant, or otherwise dispose of property that comprises parks, playgrounds, golf courses, swimming pools, or other property that was dedicated to a public purpose by a private individual or entity. The transaction can be on "such terms and conditions as may be deemed desirable or necessary." A.C.A. §22-4-501(a)(2). In describing the procedure that must be followed in carrying out such a transaction, Section 503 mentions bidding as one possible requirement that might be established by the city for the disposition of the property in question. This provision indicates that cities may obtain bids for the disposition of property under the authority of that statute, but that they are not required to do so.
Consideration
The lease agreement must be supported by adequate consideration. The question of whether particular consideration is adequate is a question of fact that must be considered in light of all of the relevant information, such as the value of the property, the proposed use of the property, and the benefit that will accrue to the city as a result of the lease. (As indicated previously, a transaction for the disposition of property under the authority of A.C.A. § 22-4-501 may be supported by "such terms and conditions as may be deemed desirable or necessary." A.C.A. § 22-4-501(a)(92).)
The Arkansas Supreme Court has held that even non-monetary consideration can be adequate if a "public advantage" will result from the lease. InCity of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953), the Arkansas Supreme Court upheld a bond issue used to finance the purchase of land which was immediately thereafter conveyed to the federal government without money consideration. The court held that "public advantage" constituted consideration. The court held that there was not a true "donation" of the land, because 1) there were many benefits which the city would receive in terms of increases in business and population, and 2) the city included a reverter clause in the deed which required that the land be returned to the city (greatly improved) if it ceased to be used for the purposes of the grant.
The City of Blytheville court based its decision in part upon Little RockChamber of Commerce v. Pulaski County, 113 Ark. 439, 168 S.W. 848
(1914), in which the court had held that the county could convey a tract of land to the Chamber of Commerce (a private entity) for one dollar "and benefits to accrue to said county from the expenditure by said Chamber of Commerce of the [private] fund raised for industrial and development purposes. . . ." 113 Ark. at 441. The court noted that the county clearly had the authority to "sell" county property, and the only question was whether the consideration was so inadequate as to constitute fraud. The court stated:
 There is no limitation placed upon the county court, by statute or otherwise, in the exercise of its judgment as to the consideration upon which the disposition of the county's property must be based; therefore, nothing short of fraud, or such gross inadequacy as will be the equivalent to fraud, is sufficient to invalidate the order of the county court directing the conveyance. The consideration may be in other than money, and the county court, in exercising its power, may determine what is to the best interests of the county. . . . Mere inadequacy of consideration is not sufficient to establish fraud.
113 Ark. at 443-44. See also Op. Att'y Gen. No. 92-022 (county can convey nursing home property to private nonprofit corporation for adequate non-money consideration); and cf. generally Op. Att'y Gen. No. 93-057
(school district could not sell school property to political subdivisions for nominal consideration because no other non-money consideration would support the sale).
The Little Rock Chamber of Commerce court also noted that this conveyance of property did not violate Article 12, § 5 of the Arkansas Constitution, which provides as follows:
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
ARK. CONST., art. 12, § 5. The court pointed out that "[t]he disposition of real estate owned by the county is not an appropriation of money within the meaning of the Constitution, nor . . . is the taxing power involved in any way in the transaction."
The court in City of Blytheville v. Parks, supra, similarly noted that no violation of Article 12, § 5 existed, because the "city [was] not making itself a partner with nor lending its credit to the United States Government." 221 Ark. at 741.
On the basis of the foregoing authorities, I conclude that the question of the adequacy of the consideration of $1.00 per each twenty-year term of the lease agreement about which you have inquired must be answered after evaluating all of the relevant information, including any public advantage that the city will gain as a result of the lease.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] It should also be noted that first class cities are authorized to dispose of property that was acquired for a specific purpose which has become impossible or impracticable. This statute does not address bidding or consideration. The only conditions for this type of disposition is that the proceeds must be used for city purposes.