STATE *ex rel.* THE COUNTY COURT OF MINERAL COUNTY, A CORPORATION, *et al.*

*v.*

JOHN H. BANE, AS PRESIDENT, ETC., *et al.*

(No. 12301)

Submitted January 8, 1964.     Decided March 24, 1964.

*Jackson, Kelly, Holt & O'Farrell, F. Paul Chambers, James K. Brown, C. Reeves Taylor,* Prosecuting Attorney, Mineral County, for relators.

*E. Nobles Lowe,* New York City, *Blundon & Hart, Joseph A. Blundon* and *Henry Clay Hart, Jr.,* for amicus curiae for W. Va. Pulp and Paper Co., a Corp.

*Spilman, Thomas, Battle & Klostermeyer, Howard R. Klostermeyer,* amicus curiae for W. Va. Chamber of Commerce and W. Va. Bankers Assn.

*Rogers & Hott, N. Howard Rogers, Donald C. Hott,* for respondents.

394

BROWNING, JUDGE:

In this original proceeding in mandamus the County Court of Mineral County is seeking to uphold the constitutionality of Chapter 78, Acts of the Legislature, Regular Session, 1963, the pertinent provisions of which are stated in the companion proceeding styled *State ex rel. County Court of Marion County* v. *Demus*, decided herewith. Pursuant to the act petitioner has authorized the issuance of $500,000 in bonds, the proceeds whereof are to be used to purchase a site in the City of Piedmont, Mineral County, West Virginia, from West Virginia Pulp and Paper Company, a corporation, and to erect a building thereon to be thereafter leased to West Virginia Pulp and Paper Company to be used as a warehouse as an extension of and in addition to its manufacturing plant which is located partly within Piedmont and Beryl, Mineral County, West Virginia, and partly in Luke, Allegheny County, Maryland. West Virginia Pulp and Paper is to purchase all of the bonds and will have the option to purchase the property, during the term of the lease upon payment of 104% of the outstanding indebtedness, or, at the expiration of the term, upon the payment of $1,000.00.

The president and clerk of the county court refused to sign and attest the bonds and to affix the county seal and, pursuant to the rule issued by this Court, demurred and answered asserting the act to be unconstitutional because in contravention of the following sections of the constitution of this state and the United States: (1) Art. X, Sec. 1; (2) Art. X, Sec. 6; (3) Art. X, Sec. 8; (4) Art. III, Secs. 9 and 10; and (5) Art. XIV, Sec. 1, Const. U. S.; all of which contentions were held to be untenable in the *Demus* proceeding. However, three questions are raised herein which are not answered in that proceeding. They are: (1) A warehouse is not an industrial plant within the meaning of the act; (2) the relator county court is not authorized to exercise powers under the act within the corporate limits of a municipality even though such municipality lies within the geographical boundaries of the county; and (3) the con-

sideration of $1,000.00, for which the lessee may purchase the plant at the expiration of the lease, is only nominal.

(1) Section 4 of the act empowers county courts " (1) to acquire whether by purchase, construction, or gift, one or more industrial plants, *or additions thereto* . . . ." (Italics supplied.) Section 4 (3) of the act authorizes the issuance of revenue bonds to defray the cost of acquiring ". . . an industrial plant, *or an addition,* extension or improvement thereto. . . . " (Italics supplied.) Upon a careful consideration of the language used in the act and of the agreement approved by a majority of the members of the county court, this Court does not find a distinction between the building to be erected under that lease agreement and the factory to be erected in Marion County in the *Demus* case.

(2) The only territorial restriction imposed upon the securing of an industrial site by a county for the erection of a factory thereon by the act is the provision in section five that it ". . . shall be located within the county . . . ." The record shows that the county court has secured the approval of the City of Piedmont, Mineral County, wherein this industrial building is to be located, although it is the view of this Court that such approval would not have been necessary.

(3) Finally, the respondents urge in their demurrer that the proposed grant by the county court to the lessee, West Virginia Pulp and Paper Company, of an option to purchase the industrial plant at the expiration of the full fifteen year term of the lease upon the payment of an additional sum of one thousand dollars or, upon earlier termination thereof, upon the payment of 104% of the face amount of the bonds then outstanding, is unlawful and invalidates the transaction inasmuch as the sum is nominal in view of the anticipated $500,000 cost of the plant. The provision of an option to purchase by a lessee is contained in Section 4 (2) of the act wherein it is provided that "In addition to any other powers which a county . . . may now have, each county, by and through its county court . . . shall have the following

powers: . . . (2) To lease to others any or all of its industrial plants for such rentals and upon such terms and conditions as the governing body may deem advisable and such governmental body *may grant unto its lessee an option to purchase said industrial plant,* at the expiration of the term of said lease, upon such terms as may be agreed upon; . . . ." (Italics supplied.) In the recent decision by the Court of Appeals of Kentucky in *Bennett* v. *City of Mayfield,* 323 S. W. 2d 573, in holding that a similar provision under a similar lease which a county court had entered into under the provision of an act of that state practically identical with the provisions of our act the Court said: "The option provision in the present plan injects a new feature. In other cases of this class it appears title to the property remained in the city and became free of the lien whenever the bonds became fully paid. It will be otherwise in this case if the lessee elects to exercise the option. The city will then have nothing tangible. But it started out on the venture with nothing. Meanwhile, the city will have had the benefits arising from a large local enterprise and the community will in the future have that, plus the taxes on the property. . . ." In *Darnell* v. *County of Montgomery,* 308 S. W. 2d 373, the Tennessee Supreme Court, in passing upon the validity of an act similar to the one before this Court and in which it was provided in the lease that the lessee be granted an option to purchase the plant at any time within the last ten years of the lease upon payment of the balance of the bonds and interest plus an additional one thousand dollars, in holding that the option was valid said:

> ". . . if and when, said option shall be exercised, it will be a part of the contract and of the consideration for the contract existing *ab initio,* and not a contract arising subsequent to the lease contract.
>
> "Therefore, the complaint that the nominal additional sum of $1,000 in the event the lessee purchases the property is merely a token or inadequate consideration, is not justified, by reason of what has just been said and especially in view of the fact that the lessee is obligated during the

term of the lease to pay all taxes that might be levied upon the property by any taxing authority, lawfully of course; to make all necessary repairs and replacements, to keep in force and pay for all insurance; to make alterations at its own expense; to indemnify and save harmless the lessor from all claims for death or injury to the person or damage to the property of others resulting from wrongful or negligent acts of the lessee, or its agents and servants about the leased premises and finally that in the event of damage to or destruction of the building or the taking by condemnation in whole or in part by any competent authority, there shall be no abatement or reduction in the rent payable to the lessor, except that in lieu of the obligation to repair or restore or reconstruct the building, the lessee may pay in advance all unpaid installments of rent due under the lease and the lease shall cease and determine.

"It is, therefore, apparent that the consideration moving to the County from the lessee is more than just the rent and interest due plus the $1,000 in the event the option to purchase is exercised."

To the same effect see *Newberry* v. *City of Andalusia*, 257 Ala. 49, 57 So. 2d 629; and *Village of Deming* v. *Hosdreg Co.*, 62 N. M. 18, 303 P. 2d 920. The option agreement clearly is authorized by the act and this Court cannot say that it is not fair and reasonable and therefore overrules the demurrer as to that point as well as upon all of the other grounds to which the demurrer was directed.

For the reasons stated in the companion case of *State ex rel. County Court of Marion County* v. *Demus,* the demurrer of the respondent is overruled and the writ of mandamus will issue directing the president and the clerk of the County Court of Mineral County to sign and attest the bonds and to affix the county seal and to execute the agreement between the County Court of Mineral County and the West Virginia Pulp and Paper Company, Inc.

*Writ granted.*